**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

Case No. 1:21-cv-21091-JEM

Sturmanskie LLC,

      Plaintiff,

v.

picturemaxx AG, Gerhard Feigl,
Marcin Czyzewski, Matthias Dittler,
Thomas Kießl, and Alexander Rüegg,

      Defendants.

_____ /

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS..............................1

MEMORANDUM OF LAW ........................................................................................4

I.   THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS. .........................4

    A.   Sturmanskie's Claimed Torts Do Not Arise from Tortious Conduct in
        Florida..................................................................................................5

    B.   Asserting Specific Personal Jurisdiction Over Defendants Would
        Violate Due Process Where There Are No Forum Contacts Aside
        From Communications With Sturmanskie's Counsel Or Manager. ..........6

II.  COUNTS I THROUGH VII FAIL TO ADEQUATELY STATE CLAIMS FOR RELIEF AND
    MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6). ..............................8

    A.   Count I of the FAC Fails to State A Viable Claim Under the Exchange
        Act. ....................................................................................................9

        1.   Sturmanskie's Contract with Supreme is a Foreign Transaction
            Beyond the Scope of Section 10(b). ...............................................9

        2.   Sturmanskie Fails to Plead Particularized Facts Showing
            Material Misstatements or Omissions Made with Scienter..........12

    B.   Counts II, III, and IV for Tortious Interference Fail to Adequately
        Plead the Elements Required to Maintain the Claims Under Fed. R.
        Civ. P. 12. .........................................................................................20

        1.   Counts II, III, and IV Fail to Allege Defendants Unjustifiably
            Interfered Because Defendants are a Necessary Party to
            Contracts and Business Relationships Involving Transfers of
            Its Shares. ...................................................................................21

        2.   Count III Also Fails to Plead Defendants Induced a Breach of
            the Champlain SPA.......................................................................22

        3.   Count IV Also Fails to Plead that Sturmanskie and Champlain
            had an Ongoing Business Relationship with Which Defendants
            could Tortiously Interfere............................................................23

    C.   Sturmanskie Defeats Its Own Count V Conversion Claim by
        Admitting It Did Not and Could Not Possess the Subject Shares.............25

    D.   Sturmanskie Fails To Allege An Actionable Underlying Tort Or That
        The Individual Defendants Had A Personal Stake Apart From The
        Defendant Corporation So As To Sustain Count VI's Civil Conspiracy
        Claim. ...............................................................................................26

CONCLUSION .......................................................................................................28

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Argos Glob. Partner Servs., LLC v. Ciuchini*,
  446 F. Supp. 3d 1073 (S.D. Fla. 2020) ................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................8

*Baloco ex rel. Tapia v. Drummond Co.*,
  640 F.3d 1338, 1349 n.13 (11th Cir. 2011) .......................................................................11

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
  116 F.3d 1364 (11th Cir. 1997)................................................................................8, 9, 17

*Burger King Corp. v. Berry*,
  No. 20-CV-21801, 2020 WL 10224201 (S.D. Fla. Sept. 4, 2020) ......................................22

*China Moon Cap. Partners v. Quasar Cap. Corp.*,
  No. 18-62095, 2019 WL 591693 (S.D. Fla. Jan. 28, 2019)................................................7, 8

*Cornell v. Soundgarden*,
  No. 19-25045, 2020 WL 6120588 (S.D. Fla. Aug. 11, 2020) (Martinez, J.) ..................5, 6, 8

*De Fontbrune v. Wofsy*,
  838 F.3d 992 (9th Cir. 2016), as amended on denial of reh'g and reh'g en
  banc (Nov. 14, 2016) .........................................................................................................11

*Don King Prods., Inc. v. Mosley*,
  No. 15-61717, 2016 WL 3950930, at *4 (S.D. Fla. Jan. 27, 2016) ......................................6

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
  594 F.3d 783 (11th Cir. 2010) ...........................................................................................14

*FindWhat Inv. Grp. v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011).................................................................................*passim*

*Griffin Indus., Inc. v. Irvin*,
  496 F.3d 1189 (11th Cir. 2007)......................................................................................9, 17

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*,
  910 F.3d 1186 (11th Cir. 2018)............................................................................................3

*Honus Wagner Co. v. Luminary Grp.*,
  No. 17-CV-61317, 2017 WL 6547899 (S.D. Fla. Dec. 21, 2017)..........................................7

*In re Banco Santander Securities-Optimal Litig.*,
  732 F. Supp. 2d 1305, 1317 (S.D. Fla. 2010) .................................................................9, 10

*Internet Sols. Corp. v. Marshall*,
    557 F.3d 1293 (11th Cir. 2009)................................................................................4, 5

*Jackson Inv. Grp. v. Thomas*,
    325 F. Supp. 3d 1334 (N.D. Ga. 2017)...........................................................................16

*Jackson v. BellSouth Commc'n*,
    372 F. 3d 1250 (11th Cir. 2004)......................................................................................8

*Landmark Bank, N.A. v. Cmty. Choice Fin., Inc.*,
    No. 17-60974, 2017 WL 4310754 (S.D. Fla. Sept. 28, 2017)..........................................20

*Lopatine v. Finlink, Inc.*,
    No. 21-20987, 2021 WL 3129933 (S.D. Fla. July 23, 2021) .........................................7, 8

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013)........................................................................................5

*Mariscotti v. Merco Grp. at Akoya, Inc.*,
    917 So. 2d 890 (Fla. 3d DCA 2005) ..............................................................................20

*Mattocks v. Black Entm't Television LLC*,
    43 F. Supp. 3d 1311 (S.D. Fla. 2014).........................................................................20, 21

*Metnick & Levy, P.A. v. Seuling*,
    123 So. 3d 639 (Fla. 4th DCA 2013) ...............................................................................5

*McKinney-Green, Inc. v. Davis*,
    606 So. 2d 393 (Fla. 1st DCA 1992)..........................................................................22, 23

*Mizarro v. Home Depot Inc.*,
    544 F.3d 12307 (11th Cir. 2008)....................................................................................12

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010) ...................................................................................................9, 10

*Oxford Asset Mgmt., Ltd. v. Jahairs*,
    297 F.3d 1182 (11th Cir. 2002)........................................................................................8

*PG Creative Inc. v. Affirm Agency, LLC*,
    No. 18-CV-24299, 2019 WL 5684219 (S.D. Fla. Oct. 31, 2019)......................................7

*Quantum Cap., LLC v. Banco de los Trabajadores*,
    No. 14-cv-23193, 2015 WL 12259226 (S.D. Fla. Dec. 23, 2015).....................................6

*Rautenberg v. Falz*,
    193 So. 3d 924, 929–30 (Fla. 2d DCA 2016) ...................................................................6

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*,
    742 So. 2d 381 (Fla. 4th DCA 1999) ................................................................21

*Snow v. DirecTV, Inc.*,
    450 F.3d 1314 (2006) ............................................................................................4

*Textile USA, Inc. v. Diageo N. Am., Inc.*,
    No. 15-24309, 2017 WL 10187642 (S.D. Fla. July 31, 2017) .................................7

*Thomson v. RelationServe Media, Inc.*,
    610 F.3d 628 (11th Cir. 2010) ........................................................ 12, 13, 19, 20

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009).......................................................................4, 5

*Waite v. All Acquisition Corp.*,
    901 F.3d 1307 (11th Cir. 2018)...........................................................................6

*Walden, v. Fiore*,
    571 U.S. 277, 283–288 (2014)..........................................................................6, 7

## Statutes

15 U.S.C § 10(B) ...................................................................................*passim*

15 U.S.C § 20(A) ............................................................................................. 11, 13

Fla. Stat. § 48.193(1)(a)2...................................................................................5, 6

Fla. Stat. § 671.105 ............................................................................................20

Fla. Stat. § 678.1101(1)(b) ............................................................................. 20, 26

Fla. Stat. § 678.1101(1)(d) ...................................................................................26

Private Securities Litigation and Reform Act of 1995 ("PSLRA") .......................... 12, 13, 14, 18

Securities Exchange Act of 1934......................................................... 1, 11, 12, 16

## Foreign Authorities

Bürgerliches Gesetzbuch [BGB], § 158, para. 1....................................................11

German Stock Corp. Act § 67...............................................................................22

## Other Authorities

17 C.F.R. § 240.10b-5 .......................................................................................14

Fed. R. Civ. P. 8.................................................................................................25

Fed. R. Civ. P. 9(b).............................................................................................12

Fed. R. Civ. P. 12...............................................................................................12

Fed. R. Civ. P. 44.1............................................................................................11

Defendants picturemaxx AG, Gerhard Feigl, Marcin Czyzewski, Matthias Dittler, Thomas Kießl, and Alexander Rüegg move to dismiss Plaintiff, Sturmanskie LLC's First Amended Complaint [ECF No. 21] for lack of personal jurisdiction and failing to state claims upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively.

The First Amended Complaint recasts and re-alleges the claims at issue in only the most superficial ways and the First Amended Complaint is still subject to dismissal. A Delaware LLC ("Plaintiff" or "Sturmanskie") acquires German corporate shares from a Panamanian company, which company disputes the validity of the transfer under Swiss and German law. Unable to register the transfer with the German corporation owing to European securities account restrictions, Sturmanskie executes a sale agreement—governed by German law—of the German shares to a Swiss company. Sturmanskie is then (again) unable to register the share transfer to the Swiss company owing to the Panamanian company's adverse claim. Unhappy with its inability to register the German shares, Sturmanskie brings this lawsuit, again throwing several claims at the wall—and they still do not stick.

Sturmanskie's claims are barred for multiple reasons:

- The Court lacks personal jurisdiction over Defendants who are all German or Swiss, and all have virtually no contact with Florida outside what Sturmanskie itself initiated;

- The Count I Exchange Act claim is barred because the Exchange Act does not apply to unlisted foreign securities with no domestic connection; and, in any event, Count I fails to satisfy requisite pleading standards;

- The Count II, III, and IV tortious interference claims fail to plead Defendants were strangers to the interfered-with contracts and business relationship—as all the contracts and business relationship require share registration decisions, which are solely within Defendants' purview;

- The Count V conversion claim fails to plead an immediate right to possession; and

- The Count VI civil conspiracy claim is barred by the intracorporate conspiracy doctrine, whereby a corporation cannot conspire with its board members, and its board members, when acting in the scope of their board responsibilities, cannot conspire among themselves.

### FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Sturmanskie is a Delaware limited liability company with a registered office in Delaware. First Amended Complaint ("FAC") ¶ 38. On December 5, 2019, Sturmanskie contacted Defendant picturemaxx AG ("picturemaxx") to register Sturmanskie's ownership of 68,000 picturemaxx shares (the "Subject Shares"). *See id.* ¶ 16. Picturemaxx is a German corporation; Feigl,

Czyzewski, Dittler, Kießl, and Rüegg (the "Individual Defendants") are members of picturemaxx's boards, encompassing a mix of German and Swiss citizenships and residencies. *See id.* ¶¶ 39–45.

Sturmanskie claims ownership of the Subject Shares by effect of an April 24, 2018 Share Purchase Agreement ("Champlain SPA") with nonparty Panamanian company Champlain Holding, S.A. ("Champlain"). Under the Champlain SPA, Sturmanskie sold and transferred 18,866 picturemaxx shares in exchange for Champlain's promise to pay an agreed amount—by September 30, 2018—into an account belonging to Sturmanskie's counsel (the "Florida Account"). *See id.* ¶¶ 4–5, 11. As security for Champlain's payment obligation, Champlain placed in escrow (the "Escrow Agreement") the Subject Shares. *See id.* ¶¶ 7–12. Sturmanskie claims ownership of the Subject Shares after Champlain's breach of its payment obligation. *See id.* ¶¶ 13–14.

In response to Sturmanskie's December 2019 request to register the Subject Shares, picturemaxx contacted both parties to the transaction—Sturmanskie and Champlain—to determine ownership of the Subject Shares. *See id.* ¶¶ 18–21. On July 7, 2020, Champlain challenged the validity of the Champlain SPA under Swiss law. *See id.* ¶ 23. Sturmanskie, however, supported its claim "with incontrovertible documentary proof[,]" *id.* ¶ 22, engaging German law firms to press its claim to the Subject Shares, *see id.* ¶ 24.

On August 26, 2020, picturemaxx's German counsel, Bernhard Noreisch, sent an email to Sturmanskie's German counsel, Esfandiar Khorrami, regarding the Subject Shares. Noreisch wrote:

> Now that notarized copies [of supporting documents] have been submitted, our client [picturemaxx] supposes it can assume the ownership rights of Sturmanskie LLC without violating its duties.
>
> Therefore, <u>*our client no longer has any objections to the registration of your client [Sturmanskie] as a shareholder in the share register*</u>. <u>In order to be able to deliver the shares held in collective deposit of securities to your client's securities account and thus automatically effect the transfer of the share register . . . , our client is requesting the securities account data of your client.</u> For this purpose, our client is asking your client to fill out the attached form and return it (taking into account the instructions). <u>If your client does not have a securities account, please ask your client to open one with its principal bank or, alternatively, with a direct bank</u>.

Ex. B, August 26, 2020 Email from Noreisch to Khorrami, at 2 (emphasis added);[1] *see also* FAC

---

[1] Please note that Exhibit B is exactly the same document as the FAC's Exhibit A—Noreisch's August 26, 2020 email, in German and in the English translation Defendants obtained to respond to the original Complaint. It is attached as Exhibit B here in an effort to relieve the Court of having to refer to different filings in reviewing this Motion.

¶¶ 25–26.

Sturmanskie was unable to open a bank account capable of holding the Subject Shares, owing to the "tightening of anti-money laundering and tax avoidance provisions[.]" FAC ¶ 78. Sturmanskie was "forced" to sell the Subject Shares. *Id.* ¶ 30. To ensure the share sale was acceptable to picturemaxx, on November 23, 2020, Khorrami contacted picturemaxx's German counsel, Eva Nase—sending Nase a "draft of the transfer agreement." Ex. C., Email Chain between Nase and Khorrami, at 5;[2] *see also* FAC ¶ 33. Nase and Khorrami then exchange several emails relating to the contemplated share sale:

- Nase (responding to Khorrami's sending the draft agreement): "I'll look through it ASAP. Has the purchaser already been determined?" Ex. C at 5.

- Khorrami: "[W]e are still getting the details on the purchaser." *Id.*

- Nase: "Ok, thanks!" *Id.* at 4.

- Eight days later, on December 1, 2020, Khorrami sent to Nase an executed version of the executed Share Purchase Agreement to Supreme. *See* FAC ¶ 35; Ex. A ¶ 6.

- The next day, on December 2, 2020, Khorrami sends a second version of the executed Share Purchase Agreement to Nase: "Things have moved very quickly after all . . . enclosed is the signed contract for the transfer of the shares to [nonparty Swiss company] Supreme Asset AG[.]" Ex. C at 4; *see also* Ex. A ¶ 6.

- On December 7, 2020, Nase responds: "Please excuse the fact that we are only getting back to you now—it was too busy last week. Which of the two contracts should we use as a basis for further action, do the versions differ?" Ex. C at 3.

- Khorrami replies: "No issue at all—it's hectic here too[.] Please use the contract from the second email." *Id.* at 3.

The referenced, executed share purchase agreement ("Supreme SPA") is attached as Exhibit D.[3] The Supreme SPA provides, *inter alia*, that it will be governed by German law with an exclusive place of jurisdiction and place of performance in Berlin, Germany. *See id.* § 7(5)–(6).

---

[2] Sturmanskie refers to these communications, *see* FAC ¶¶ 33, 81-83, which are central to several of Sturmanskie's claims, *see id.* ¶¶ 96, 98, 100, 109-12, 141. "Under the doctrine of incorporation by reference, we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). Eva Nase, picturemaxx's outside German counsel, authenticates Exhibits B–E as being the actual communications and agreements referred to by Sturmanskie. *See generally* Ex. A, Nase Decl. Nase also explains the respective parties' representation by counsel in Germany. *See* Ex. A ¶ 5; *see also* Ex. F, picturemaxx Decl. ¶ 17.

[3] Sturmanskie refers to the Supreme SPA, *see e.g.*, FAC ¶¶ 31, 35, 80, 83, which is central to several of Sturmanskie's claims, *see e.g.*, ¶¶ 94-96, 98, 101, 104-08, 151.

3

On December 9, 2020—two days after clarifying which contract picturemaxx should use—Khorrami writes Nase, asking if the share transfer to Supreme could be effected before the holidays. *See* Ex. C at 2. Nase responds, attaching a letter. *See id.* The letter (1) explains that Champlain's legal representatives contacted picturemaxx, disputing Sturmanskie's ownership of the Subject Shares; (2) explains that picturemaxx management board will not register Supreme as the Subject Shares transferee while there are competing ownership claims, as doing so would be outside the duties of the picturemaxx management board; and (3) suggests "the best solution is a mutually agreed upon notification or legally binding decision on the ownership of the [Subject Shares]." Ex. E, Dec. 9, 2020 Letter from Nase to Khorrami, at 2.[4] Sturmanskie then allegedly breached the Supreme SPA because it "was unable to conclude the transaction[.]" FAC ¶ 87. Sturmanskie also alleges learning that Defendants transferred ownership of the Subject Shares to Champlain. *See id.* ¶ 89.

The FAC brings several claims: securities fraud (Count I); varying claims of tortious interference (Counts II, III, and IV); conversion (Count V); and civil conspiracy (Count VI). Defendants' Motion to Dismiss the FAC ("Motion") seeks the FAC's dismissal for lack of personal jurisdiction and failure to state a claim.

## MEMORANDUM OF LAW

### I.     The Court Lacks Personal Jurisdiction over Defendants.

This case involves a Delaware-based Plaintiff disputing German corporate share ownership with a Panamanian company so that the shares can be sold to a Swiss purchaser. At bottom, Defendants simply have <u>no</u> forum contacts outside of their limited interactions with Sturmanskie.

On a motion to dismiss for lack of personal jurisdiction, the Court must conduct a two step-inquiry: (1) whether the exercise of jurisdiction would be appropriate under the state's long-arm statute; and (2) "whether the exercise of jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The Court need

---

[4] Sturmanskie refers to the December 9, 2020 Letter, *see* FAC ¶¶ 35, 85-86, which is central to several of Sturmanskie's claims, *see e.g.*, FAC ¶¶ 101, 109.

only accept as true a plaintiff's non-vague, non-conclusory factual allegations "uncontroverted by the defendant's affidavits." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317–18 (2006) (cleaned up; citation omitted). Only if the plaintiff meets this burden must the defendant "raise, through affidavits, documents, or testimony, a meritorious challenge to personal jurisdiction." *Internet Sols.*, 557 F.3d at 1295 (cleaned up; citation omitted).

As fully set forth below, Sturmanskie fails to adequately that allege personal jurisdiction exists over the nonresident Defendants. Sturmanskie's *in personam* jurisdictional failings are sealed by the Due Process Clause: Sturmanskie alleges <u>zero</u> forum contact by the nonresident Defendants — outside the convoluted series of events Sturmanskie itself initiated.

A. *Sturmanskie's Claimed Torts Do Not Arise from Tortious Conduct in Florida.*

Sturmanskie's sole basis for personal jurisdiction is the following: "[t]his Court has *in personam* jurisdiction over all Defendants . . . . under Fla. Stat. § 48.193(1)(a)(2)[.] Defendants have committed tortious acts in Florida." FAC ¶ 50. However, Sturmanskie fails to adequately allege personal jurisdiction exists; for this reason alone, the Complaint should be dismissed. *See Mazer*, 556 F.3d at 1274. Sturmanskie's tort-based personal jurisdiction allegations are in two groups: (1) fraud-related misconduct; and (2) misconduct related to its claims of tortious interference and conversion. *See* FAC ¶ 50. Neither basis withstands scrutiny.

First, "[u]nder Florida law, a nonresident commits a tortious act within Florida when he commits an act <u>outside</u> the state that causes <u>injury within Florida</u>." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (cleaned up). Regarding fraud, Sturmanskie relies on picturemaxx's "sending emails and making telephonic statements to Plaintiff's counsel and Manager, who were . . . Florida residents, and which contained fraudulent statements or omissions of fact that caused Plaintiff to act in Florida in reliance[.]" FAC ¶ 50(b). This allegation fails to satisfy the Florida long arm statute because Sturmanskie again neglects to allege an injury in Florida: Sturmanskie is a Delaware entity with a registered office in Delaware, <u>not a Florida resident</u>. *See* FAC ¶ 2. The injury was felt, if anywhere, in Delaware—<u>not in Florida</u>. See *Cornell v. Soundgarden*, No. 19-25045, 2020 WL 6120588, at *3 (S.D. Fla. Aug. 11, 2020) (Martinez, J.) (determining a plaintiff's failure to allege a Florida injury fatal to jurisdiction under § 48.193(1)(a)2)).

Second, with respect to tortious interference and conversion: Florida courts determine whether such torts satisfy Florida's long arm statute by examining the location of the tortious

conduct itself, not where the effects are felt. *See Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. 4th DCA 2013) (affirming dismissal of nonresident defendant when the only alleged tortious interference occurred out of state); *Rautenberg v. Falz*, 193 So. 3d 924, 929–30 (Fla. 2d DCA 2016) (reversing trial court and directing dismissal of nonresident defendant when the alleged conversion occurred where the defendant "gained control and dominion" of the subject property out of state).

As relevant to Sturmanskie's tortious interference and conversion claims, Sturmanskie alleges that Defendants' acts "in Germany" or "in Germany and Switzerland" caused it to not receive money in Florida. *See* FAC ¶ 50(c)–(e). Sturmanskie says it clearly: the misconduct was entirely foreign. And where Sturmanskie failed to receive payment is "immaterial for the purpose of determining jurisdiction[.]" *Don King Prods., Inc. v. Mosley*, No. 15-61717, 2016 WL 3950930, at *4 (S.D. Fla. Jan. 27, 2016) (quoting *Seuling*, 123 So. 3d at 645). Sturmanskie thus fails to allege any tortious conduct within Florida or causing injury in Florida, as required by the statute. *See* Fla. Stat. § 48.193(1)(a)2*; see also Soundgarden*, 2020 WL 6120588, at *3; *Don King*, 2016 WL 3950930 at *4. As such, Sturmanskie's Complaint must be dismissed.

B. *Asserting Specific Personal Jurisdiction Over Defendants Would Violate Due Process Where There Are No Forum Contacts Aside From Communications With Sturmanskie's Counsel Or Manager.*

Exercising specific personal jurisdiction over nonresidents only comports with due process if Sturmanskie can show that its claims arise out of or relate to Defendants' contacts with Florida, and establishes that Defendants purposefully availed themselves of the privilege of conducting activities in Florida. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018). Sturmanskie's amended pleading still falls short of the minimum contacts needed for due process.

In *Walden v. Fiore*, the Supreme Court clarified the minimum contacts analysis required in any specific personal jurisdiction context—including intentional torts. *See* 571 U.S. 277, 283–288 (2014). The Court explained:

> The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. Two related aspects of this necessary relationship are relevant[.]
>
> First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State. . . .

> Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. . . .
>
> But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.

*Id.* at 283–285 (cleaned up; last emphasis added).

Applying *Walden*, courts in this district routinely grant motions to dismiss for lack of personal jurisdiction where the plaintiff fails to show any forum contact by a nonresident defendant outside of the plaintiff-defendant relationship:

- "[T]he heart of the Defendant's connections with the state are through [the plaintiffs], however, exercising jurisdiction over the Defendant on this basis would violate the Due Process Clause of the United States Constitution. Even drawing all inferences in favor of the plaintiffs, i.e. that business meetings took place in Florida, communications were sent to [a plaintiff] in Florida, and various agreements between the Defendant and plaintiff were violated, the Court finds these allegations do not allow the Court to exercise specific personal jurisdiction over the Defendant." *Lopatine v. Finlink, Inc.*, No. 21-20987, 2021 WL 3129933, at *4 (S.D. Fla. July 23, 2021).

- "Plaintiffs' insistence there are sufficient minimum contacts because [a plaintiff] experienced injury in Florida) is insufficient in light of *Walden*'s requirement Plaintiffs show Defendants' connection *to the forum*, 'not just to a plaintiff who lived there.'" *Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1092 (S.D. Fla. 2020) (quoting *Walden*, 571 U.S. at 288; record citation omitted).

- "That plaintiff happens to be a Florida company is wholly deficient evidence of Defendants' contacts with Florida. To be sure, the Supreme Court has rejected other plaintiffs' attempts to satisfy this prong based on their own contacts—rather than the defendants' contacts—with the forum." *PG Creative Inc. v. Affirm Agency, LLC*, No. 18-CV-24299, 2019 WL 5684219, at *5 (S.D. Fla. Oct. 31, 2019) (citing *Walden*, 571 U.S. at 284).

- "Exercise of due process based on this theory would controvert the Supreme Court's guidance in *Walden* because it would arise not out of Defendants' purposeful contacts with the state but rather would be based on their connection to plaintiff and plaintiff's contacts with Florida." *Honus Wagner Co. v. Luminary Grp.*, No. 17-CV-61317, 2017 WL 6547899, at *12 (S.D. Fla. Dec. 21, 2017).

- "[The defendant's] only link to Florida is [the plaintiff], which, by itself, is insufficient to satisfy the requirements of due process." *Textile USA, Inc. v. Diageo N. Am., Inc.*, No. 15-24309, 2017 WL 10187642, at *7 (S.D. Fla. July 31, 2017).

- "Defendant's only tie to Florida is through plaintiff itself, and that simply is not enough." *China Moon Cap. Partners v. Quasar Cap. Corp.*, No. 18-62095, 2019 WL 591693, at *4 (S.D. Fla. Jan. 28, 2019).

Here, Sturmanskie merely alleges contacts between its manager and counsel and Defendants—and "that simply is not enough." *China Moon*, 2019 WL 591693, at *4. Worse: Sturmanskie, a Delaware entity, fails to allege injury to a Florida entity. *See* FAC ¶ 2. But as this Court itself would agree, "even if [Sturmanskie] were domiciled in Florida, reliance upon [Sturmanskie's] Florida residence to establish jurisdiction over Defendants would 'impermissibly allow plaintiff's contacts with the defendants and forum to drive the jurisdictional analysis.'" *Soundgarden*, 2020 WL 6120588, at *3 (quoting *Walden*, 571 U.S. at 289). Indeed, if Sturmanskie's manager and counsel <u>were to move tomorrow to another state, this matter would have little to no connection with Florida</u>—this is precisely the type of jurisdictional issue explored by the Supreme Court in *Walden*." *Lopatine*, 2021 WL 3129933, at *4.

Sturmanskie cannot cure this deficiency. Permitting further pleadings would waste finite judicial resources. Dismissal with prejudice is the only appropriate remedy. *See, e.g.*, *id.* at *4 (dismissing with prejudice).

## II.      <u>Counts I Through VII Fail To Adequately State Claims For Relief And Must Be Dismissed Pursuant To Fed. R. Civ. P. 12(B)(6).</u>

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). To meet this plausibility standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678 (citation omitted).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jahairs*, 297 F.3d 1182, 1188 (11th Cir. 2002). Therefore, "to survive a motion to dismiss, plaintiffs must do more than merely state legal

conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Commc'n*, 372 F. 3d 1250, 1263 (11th Cir. 2004).

"Where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks*, 116 F.3d at 1369 (11th Cir. 1997) (cleaned up). "When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) (cleaned up).

Under these standards, Sturmanskie fails to state claims for: securities fraud (Count I); tortious interference (Counts II, III, and IV); conversion (Count V); and civil conspiracy (Count VI).

A. *Count I of the FAC Fails to State A Viable Claim Under the Exchange Act.*

In Count I, Sturmanskie asserts a claim under Section 10(b) of the Exchange Act against picturemaxx. *See* FAC ¶¶ 92–102. But this claim fails as a matter of law for two reasons: Sturmanskie's SPA with Supreme was a foreign transaction beyond the jurisdictional scope of the Exchange Act; and Sturmanskie fails to plead a material misstatement or omission, made with scienter, under the heightened pleading standards applicable to such claims.

1. Sturmanskie's Contract with Supreme is a Foreign Transaction Beyond the Scope of Section 10(b).

The Supreme Court has held that claims under Section 10(b) may only be asserted with respect to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Morrison v. Nat'l Australia Bank Ltd*., 561 U.S. 247, 267 (2010). As this Court explained in *In re Banco Santander Securities-Optimal Litig.*:

> [A]pplying the judicial presumption against the extraterritoriality of a federal statute, [*Morrison*] held that fraud in connection with the purchase of stock in an Australian bank by Australian investors was not actionable under Section 10(b) of the Securities Exchange Act of 1934. Adopting what it described as a "transactional test," *Morrison* held that "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States."

732 F. Supp. 2d 1305, 1317 (S.D. Fla. 2010) (quoting *Morrison*, 561 U.S. at 273).

This case is the mirror image of *Banco Santander*, in that Sturmanskie was involved in a securities sale transaction, rather than a purchase, but the analysis is the same: Sturmanskie does

not allege selling shares on an American stock exchange (indeed, picturemaxx is not listed on any US exchange), nor does Sturmanskie allege selling shares in the United States.

Instead, Sturmanskie entered into a contract to sell shares in a privately-held German company (picturemaxx) to a Swiss company (Supreme). That contract is governed by German law and explicitly provides that the "[e]xclusive place of jurisdiction and place of performance shall be in Berlin (Germany)." Ex. D § 7(5)–(6). Thus, the Exchange Act claim does not survive *Morrison*'s presumption against extraterritoriality.[5] *See Banco Santander*, 732 F. Supp. 2d at 1317.

The only domestic connection to this entirely foreign transaction is that Sturmanskie is a Delaware LLC, and that its Manager, Adam Kravitz—also Sturmanskie's counsel in this case—is located in Florida. *See* FAC ¶ 38. This thin reed of a domestic connection is wholly inadequate.

As the Court underscored in *Morrison*, "the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." *Morrison*, 561 U.S. at 266. In *Morrison*, the domestic connection was that the deceptive conduct at issue allegedly *originated* in Florida, and yet that was not sufficient to overcome the presumption against extraterritorial application of the US securities laws to a foreign transaction. *See id.* ("[T]he focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States. Section 10(b) does not punish deceptive conduct, but only deceptive conduct 'in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered.'").

Here, the only domestic connection is weaker still: a Delaware LLC, with a Florida manager, entered into a transaction to sell shares in a privately-held, unlisted German company to a Swiss company*, in Germany*, under German law. After *Morrison*, this claim is simply (and categorically) not within the purview of the Exchange Act. Count I must be dismissed.

Sturmanskie nonetheless seeks to avoid this result by alleging the Supreme SPA "is a domestic transaction because [Sturmanskie] incurred irrevocable liability in the United States." FAC ¶ 94. Sturmanskie claims that it incurred such liability "by executing [the Supreme SPA] in Miami Beach, Florida," and "Miami-Dade County, Florida was where, physically, the seller [Sturmanskie] was located when it, through its sole Manager, committed itself to deliver a security

---

[5] Sturmanskie's alleged prior acquisition of these picturemaxx shares from Champlain in or about October 2018 (*see, e.g.,* FAC ¶ 61) is irrelevant to Sturmanskie's Exchange Act claims, because picturemaxx is not alleged to have been involved in that 2018 transaction. It was not until early December 2019—some fourteen months later—that Sturmanskie first contacted picturemaxx regarding registration of the Subject Shares. *See* FAC ¶ 65.

([the Subject Shares]),” and that under that Supreme SPA, “the purchaser (Supreme) was bound to pay the purchase price for the security ([the Subject Shares]) in the United States (into the Florida Account).” FAC ¶ 95.

But these contentions still fail to avoid *Morrison*’s presumption against extraterritoriality, for two reasons. First, Sturmanskie was not “irrevocably liable” to deliver the Subject Shares to Supreme when it executed the SPA in Florida. Rather, as the plain terms of the Supreme SPA state, Sturmanskie’s obligation to deliver the shares was subject to an express condition precedent that the SPA recites not once, but twice: that Supreme *first* make payment for the shares. *See* Ex. D § 2(2) (“The transaction takes place with financial effect by **12/01/2020** (‘Effective Date’); materially however, subject to payment of the purchase price.”) (emphasis added)); *id.* § 2(4) (“Transfer of the Shares is subject to fulfillment of the condition precedent that the purchase price is paid in full pursuant to §3 of this agreement.”) (emphasis added). Thus, Sturmanskie was not “irrevocably bound” to deliver the Subject Shares upon signing the SPA, because its obligation was subject to Supreme’s *prior* satisfaction of a material condition precedent—payment in full.[6] And *nowhere* does the FAC allege that Sturmanskie ever received payment from Supreme; in fact, the allegations of the FAC uniformly indicate the contrary. *See, e.g.*, FAC ¶ 87 (alleging Sturmanskie incurred damages of ~4.4 million euros, comprised of the 6.8 million euros that Supreme was *supposed* to pay for the shares, which it evidently did not pay (or this sum could not be the basis for damages), *less* Sturmanskie’s ~2.4 million euros’ cost for the Subject Shares); *see also id.* ¶¶ 114, 158(a) (same).

Second, and equally fundamental, is the Eleventh Circuit’s simple, bright-line test for determining the location of a securities transaction: “To determine where a purchase or sale of securities took place, the Eleventh Circuit has looked to see where the transfer of title to securities took place.” *Quantum Cap., LLC v. Banco de los Trabajadores*, No. 14-cv-23193, 2015 WL 12259226, at *12 (S.D. Fla. Dec. 23, 2015) (citing *Quail Cruises Ship Mgmt. Ltd. v. Agencia de*

---

[6] As mentioned, the parties agreed German law would govern the Supreme SPA. Under German law, “[i]f a legal transaction is entered into subject to a condition precedent, the legal transaction that is subject to the condition comes into effect when the condition is satisfied.” Bürgerliches Gesetzbuch [BGB] [Civil Code], § 158, para. 1, https://www.gesetze-im-internet.de/englisch_bgb/englisch_bgb.html#p0469. Stated otherwise: no contractual obligation exists until the satisfaction of the condition precedent. Federal Rule of Civil Procedure 44.1 authorizes courts to conduct independent judicial research into the content of foreign law at the motion to dismiss stage. *De Fontbrune v. Wofsy*, 838 F.3d 992, 999–1000 (9th Cir. 2016), *as amended on denial of reh’g and reh’g en banc* (Nov. 14, 2016) (citing *Baloco* ex rel. *Tapia v. Drummond Co.*, 640 F.3d 1338, 1349 n.13 (11th Cir. 2011)).

*Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 (11th Cir. 2011)). Sturmanskie's allegations that it signed the SPA in Florida, and that Supreme was to make payment into a Florida account, are simply irrelevant to the transaction's location analysis.[7]

As noted previously, the SPA explicitly provided that the "[e]xclusive place of jurisdiction and place of performance shall be in Berlin (Germany)." Ex. D § 7(6). Thus, under the express terms of the SPA, title to the Subject Shares of picturemaxx—an unlisted German company—were to be transferred to Supreme, a Swiss company, *in Berlin, Germany*, pursuant to German law. The transaction was, as a matter of law, not domestic, and it therefore was not subject to United States securities laws. Count I must be dismissed.

2. Sturmanskie Fails to Plead Particularized Facts Showing Material Misstatements or Omissions Made with Scienter.

Even putting extraterritoriality aside, the FAC fails to plead a viable Section 10(b) claim under the heightened pleading standards applicable to such claims in any event.

The six elements of a securities fraud claim under Section 10(b) and the associated Rule 10b-5, which Sturmanskie seeks to assert in Count I, are well-established:

> (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called "loss causation."

*Mizarro v. Home Depot Inc.*, 544 F.3d 1230, 1236–1237 (11th Cir. 2008) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).

The Private Securities Litigation and Reform Act of 1995 ("PSLRA") imposes "heightened pleading requirements on Rule 10b-5 actions" like the Rule 10b-5 claim pled here. *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citation omitted). First, "[b]ecause Rule 10b–5 sounds in fraud, the plaintiff must plead the elements of its violation with particularity." *Thomson v. RelationServe Media, Inc.*, 610 F.3d 628, 633 (11th Cir. 2010). Thus, a

---

[7] In deciding to base the determination of extraterritoriality on a "transactional test," *Morrison*, 561 U.S. at 269-70, the Supreme Court reviewed and explicitly rejected the "conduct and effects" tests the Second Circuit had developed. Sturmanskie's allegations echo the latter. The *Morrison* Court described the Second Circuit as having adopted "(1) an effects test, whether the wrongful conduct had a substantial effect in the United States or upon United States citizens, and (2) a conduct test, whether the wrongful conduct occurred in the United States." *Morrison*, 561 U.S. at 257 (cleaned up). In rejecting these tests, the *Morrison* Court noted, *inter alia*, that "Commentators have criticized the unpredictable and inconsistent application of § 10(b) to transnational cases," *id.* at 260, and the Court concluded that, "Rather than guess anew in each case, we apply the presumption [against extraterritoriality] in all cases, preserving a stable background against which Congress can legislate with predictable effects." *Id.* at 261.

complaint must satisfy the requirements of Fed. R. Civ. P. 9(b) "to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat*, 658 F.3d at 1296. The PSLRA also requires a securities fraud complaint "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading[.]" *Id.* (quoting 15 U.S.C. § 78*u*-4(b)(1)). Finally, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," *i.e.,* scienter. *Thomson*, 610 F.3d at 633 (quoting 15 U.S.C. § 78u-4(b)(2)).

"If these PSLRA pleading requirements are not satisfied, the court 'shall' dismiss the complaint.'" *FindWhat*, 658 F.3d at 1296–97 (quoting 15 U.S.C. § 78u-4(b)(3)(A)).

Sturmanskie's Exchange Act claim fails to meet these heightened pleading requirements because the FAC's allegations of falsity and of scienter are unsupported by particularized factual allegations, and rest instead on allegations that are vague, conclusory, and therefore inadequate. For these reasons also, Count I should be dismissed.

> **a. Sturmanskie Fails to Plead That Any Particular Person Made Any Specific False Statement with the Required Scienter.**

In Count I, Sturmanskie seeks to assert a claim under Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against picturemaxx. *See* FAC, Count I, heading at p. 20 & ¶¶ 93-102. Sturmanskie claims picturemaxx violated these provisions by making three alleged "false statements or omissions of material fact <u>which caused Plaintiff to enter into the [Supreme SPA]</u>." *Id.* ¶ 96(a)–(c) (emphasis added).[8]

But the FAC does not include a single particularized allegation of fact that any Board member, senior officer, or senior employee of picturemaxx had any substantive communication with Sturmanskie about registration of the Subject Shares, in either Sturmanskie's name or Supreme's name, or about Sturmanskie's entry into the SPA with Supreme. Instead, the FAC's operative factual allegations rest entirely on email communications between Sturmanskie's *outside counsel* in Germany (Khorrami) and picturemaxx's *outside counsel* in Germany (Noreisch, and

---

[8] Count I does not assert a claim under Section 10(b) against any of the Individual Defendants, only against picturemaxx. Sturmanskie has apparently abandoned its original Exchange Act claims against the Individual Defendants.

later, Nase), as well as perfunctory references to unspecified telephone conversations. *See, e.g.*, FAC ¶ 33 ("Plaintiff, through its German lawyer, contacted [picturemaxx] to ensure that the form of the [SPA] was acceptable[.]"); *id.* ¶ 81 ("Plaintiff had repeated communications with Defendant [picturemaxx], through its counsel, to ensure that (i) the form of the [SPA] was acceptable[.]"); *id.* ¶ 82 ("[picturemaxx], through its counsel, responded several times, both telephonically and by email[.]"); Exs. B–C (the actual emails referenced in the FAC, identical to their counterparts from Sturmanskie's original pleading (*see* FAC ¶¶ 69, 81–86)).

Sturmanskie attempts to address this anomaly by including vague allegations that counsel's statements reflected decisions or directives of picturemaxx's Board members (*i.e.,* the Individual Defendants) — ostensibly to attribute these statements to picturemaxx.[9] But even if one assumes, *arguendo*, that these conclusory assertions are sufficient for that purpose, the FAC does not come close to meeting the heightened pleading requirements of the PSLRA to plead fraud (*i.e.,* falsity) and scienter — <u>with particularity</u> — as to each challenged statement. *See, e.g.*, *FindWhat*, 658 F.3d at 1296–97. Moreover, the FAC's operative allegations are refuted by the very email correspondence upon which the FAC (like the original Complaint) relies, and thus cannot provide the basis for a viable claim.

> **b. Sturmanskie Fails to Plead Falsity.**

The FAC fails to plead falsity. "As with any fraud claim, a plaintiff must plead the circumstances of the conduct with particularity," and under the PSLRA, "[c]omplaints alleging falsity 'shall specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading.'" *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,* 594 F.3d 783, 789 (11th Cir. 2010) (citations omitted). The Complaint does neither.

In Count I, Sturmanskie seeks to assert in conclusory terms that it was misled when it entered into the SPA with Supreme because picturemaxx allegedly: (1) "[s]tated to Plaintiff that Plaintiff was the owner of the [Subject Shares]", FAC ¶ 96(a); (2) "[o]mitted to tell Plaintiff that providing a bank account to Computershare for deposit of the [Subject Shares] was a condition of Plaintiff's ownership," and that, "without the deposit, [picturemaxx] would be able to transfer the

---

[9] *See, e.g.*, FAC ¶ 72 ("In a subsequent phone call with [Sturmanski''s] German counsel, [picturemaxx] noted that this action was decided by the [Individual Defendants]"); *id.* ¶ 98(a) ("Each of the [Individual Defendants], acting both individually and as a group on their respective boards…caused [picturemaxx] to make the deceptive and fraudulent statements and omissions in paragraph 96(a) and (b)[.]"); *id.* ¶ 98.b (same allegation as to alleged "deceptive and fraudulent statements and omissions in paragraph 89[.]" [*sic*—no such statements or omissions alleged in ¶ 89]).

[Subject Shares] to a third party without notice to Plaintiff," *id.* ¶ 96(b)); and (3) "[s]tated to Plaintiff that it would deposit the [Subject Shares] in the purchaser's account if Plaintiff sold the [Subject Shares] to a third party," *id.* ¶ 96(c).

The assertions within Count I itself are plainly conclusory allegations, insufficient by themselves to state a claim, *see id.* ¶ 96, and the operative factual allegations of the FAC—upon which Count I must rise or fall—are themselves insufficient to state a viable claim under the governing pleading standards. With respect to the first and second alleged misstatements or omissions noted above, Sturmanskie relies on an August 26, 2020 email sent by picturemaxx's German counsel Noreisch to Sturmanskie's German counsel Khorrami. *See* FAC ¶ 69; Ex. B. In it, Noreisch merely states that, having received Sturmanskie's documentation, picturemaxx "no longer has any objection" to registering Sturmanskie as shareholder of the Subject Shares, provided that "[Sturmanskie] open a bank account where Computershare could deposit the [Subject] Shares." Ex. B at 2; FAC ¶ 74; *see also id.* ¶ 69. Notably, Noreisch explicitly stated that "[i]n order to be able to deliver the shares held in collective deposit of securities to your client's securities account and thus automatically effect the transfer of the share register," "[i]f your client does not have a securities account, please ask your client to open one with its principal bank or, alternatively, with a direct bank." Ex. B at 2 (emphasis added). Thus, Noreisch plainly communicated to Sturmanskie the transfer of the shares to Sturmanskie could not be effected in the share register *unless* Sturmanskie had an appropriate account to hold them. *See id.*

Sturmanskie fails to plead any facts, let alone particularized facts, to show that the statement of picturemaxx's counsel was not genuine in communicating that picturemaxx was prepared to register the shares in Sturmanskie's name at that time—if Sturmanskie opened an appropriate account where they could be deposited.[10] *See* FAC ¶ 74. As the FAC acknowledges, Sturmanskie found itself unable to open an appropriate account in either Europe or the United

[10] The most Sturmanskie can muster to try to question the truth of picturemaxx's statement is a vague suggestion that Defendants had previously "created difficulty" because they "preferred that Champlain would be the owner of the [Subject] Shares." FAC ¶ 67. But Sturmanskie offers no facts to either explain or support its speculation, let alone plead such facts with the particularity required by the PSLRA. *See, e.g.*, *FindWhat*, 658 F.3d at 1296–97. Moreover, the point is plainly a red herring, since picturemaxx's counsel *subsequently* communicated picturemaxx's willingness to register the shares, provided Sturmanskie opened a suitable account to receive them. *See* FAC ¶¶ 69, 74.

States. *Id.* ¶ 78. This independent, intervening impediment has nothing to do with picturemaxx or its counsel's statement to Sturmanskie.[11]

The FAC blatantly mischaracterizes the August 26 email, contorting its contents into a "final, determinative, and unconditional" acknowledgement of Sturmanskie's share ownership. *Id.* ¶ 73; *see also id.* ¶¶ 70–71, 75. But the email says what it says: after reviewing the documents Sturmanskie had provided, picturemaxxs's German counsel stated only that: "our client can reasonably assume that your client has become the owner of [the Subject Shares]," and "our client supposes it can assume the ownership rights of Sturmanskie LLC without violating its duties." Ex. B at 2.

The new allegation of a phone call—at some unspecified later date, with some unspecified person—where this unidentified person allegedly stated that Sturmanskie's ownership was affirmed and "decided by [the Individual Defendants] as a corporate action," FAC ¶ 72, adds nothing to the analysis and is hopelessly vague. A statement cannot serve as the basis for a Section 10(b) claim unless the complaint states precisely what allegedly false statement was made, when and by whom, and provides particularized factual support for its falsity. *See, e.g.*, *FindWhat*, 658 F.3d at 1296 (noting Rule 9(b) requirements); *Jackson Inv. Grp. v. Thomas*, 325 F. Supp. 3d 1334, 1353 (N.D. Ga. 2017) (dismissing Exchange Act claim for failure to plead falsity with particularity).

Next, Sturmanskie alleges it had "repeated communications" with picturemaxx, "through its counsel, to ensure that (i) the form of the [Supreme SPA] was acceptable to [picturemaxx], and (ii) that [picturemaxx] would . . . recognize the transfer of ownership from [Sturmanskie] to Supreme and register the [Subject Shares] in Supreme's name." FAC ¶ 81. According to Sturmanskie, picturemaxx, "through its counsel, responded several times, telephonically and by email, that it would recognize the transfer of ownership from [Sturmanskie] to a third-party buyer and then register the [Subject Shares] in that buyer's name," and that, "[picturemaxx] ultimately approved the draft [SPA] between [Sturmanskie] and Supreme." FAC ¶ 82.

---

[11] Sturmanskie also makes the puzzling assertion that it requested that picturemaxx "register[] the [Subject Shares] in [Sturmanskie's] name on its books and records," despite Sturmanskie's inability to open "a suitable bank or brokerage account" to lawfully hold the shares. FAC ¶ 79. But this is simply incoherent, as picturemaxx was operating on an entirely electronic system by that time (*see* FAC ¶¶ 26, 71), and Noreisch's August 26, 2020 email had plainly communicated that it was the deposit of the shares "to your client's securities account" that would "automatically effect the transfer of the share register." Ex. B. Sturmanskie's apparent misapprehension of how the electronic share register worked is simply no basis for a fraud claim against the Defendants.

But the supposed telephonic "responses" from unspecified picturemaxx "counsel" to unspecified Sturmanskie representatives, on unspecified dates, making unspecified statements, fail by a wide margin to meet the heightened pleading standards applicable to allegations of fraud. *See, e.g.*, *FindWhat*, 658 F.3d at 1296 (reciting Rule 9(b) requirements). Moreover, the actual email correspondence between the parties' respective German counsel actually defeat Sturmanskie's claim. There is no "email affirmation" from picturemaxx "that it would recognize the transfer of ownership from [Sturmanskie] to a third-party buyer and then register the [Subject Shares] in that buyer's name," as Sturmanskie alleges, still less that "[picturemaxx] ultimately approved the draft [SPA] between [Sturmanskie] and Supreme." FAC ¶ 82; *see also* Ex. C at 2–5.

Exhibits C through E are the full email exchanges between Sturmanskie's German counsel (Khorrami) and picturemaxx's German counsel (Nase), between the dates of November 23, 2020 and December 9, 2020, including Ms. Nase's attached letter of December 9, 2020, upon which the FAC, like the original Complaint, rely. *See* Exs. C–E. As that email chain shows, the draft agreement was sent on November 23, 2020. *See* Ex. C at 5. Nase merely acknowledges receipt. *See id.* Before Nase provides any substantive response, Khorrami sends her the executed Supreme SPA. *See id.* at 4–5. There is no indication Nase had even looked at the draft agreement in the intervening time—and no statements of "affirmation" of any sort. Indeed, by December 7, 2020, Nase was <u>still</u> seeking clarification from Khorrami as to which of the two versions of the agreement she had been sent was the relevant one. *See id.* at 3.

Thus, the allegation that there was an intervening telephonic or email confirmation by picturemaxx, upon which Sturmanskie could "rely" in signing the Supreme SPA, *see* FAC ¶¶ 82, 83, is itself a fraud—hopelessly vague, and refuted by the very email exchange upon which the FAC relies—which patently shows there was no such "affirmation."

The Court should therefore disregard these discredited allegations. The Complaint utterly fails to plead particularized facts to show a false or misleading statement by picturemaxx with respect to either: (a) the acceptability of the Supreme SPA; or (b) picturemaxx's willingness to register the Subject Shares in favor of either Sturmanskie or Supreme. *See Brooks*, 116 F.3d at 1369 (the Court may consider, as part of the pleadings, documents referred to by the plaintiff); *Griffin Indus.,* 496 F.3d at 1205–06 (exhibits govern over general and conclusory allegations).[12]

---

[12] Sturmanskie also claims Nase's December 9, 2020 letter to Sturmanskie's German counsel "explicitly stated that

17

### c. Sturmanskie Fails to Plead Scienter.

Beyond the failure to plead falsity, the Complaint falls even further short in pleading scienter.

"[F]or all private Rule 10b-5 actions requiring proof of scienter, 'the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [i.e., scienter].'" *FindWhat*, 658 F.3d at 1296 (quoting 15 U.S.C. § 78u-4(b)(2)). "To qualify as 'strong' . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 1300 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007)). "[S]cienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute." *Id.* at 1296 (citing *Phillips v. Scientific-Atlanta, Inc.,* 374 F.3d 1015, 1016–18 (11th Cir. 2004)). Finally, as to the substantive standard for showing scienter, "[i]n this Circuit it is by now well-established that § 10(b) and Rule 10b-5 require a showing of either an 'intent to deceive, manipulate, or defraud,' or 'severe recklessness.'" *Mizzaro*, 544 F.3d at 1238 (citing *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1282 (11th Cir.1999)).

Because the operative allegations of the FAC are based on communications between outside German counsel for Sturmanskie and picturemaxx, respectively, Sturmanskie has failed to meet—indeed, has effectively disabled itself from meeting—the PSLRA's requirements that "with respect to each act or omission alleged to violate this chapter, and with respect to each defendant," the FAC must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [*i.e.*, scienter]." *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)). The FAC falls far short of meeting these requirements and is therefore subject to the PSLRA's mandate that if its pleading requirements are not met, "the court 'shall' dismiss the

---

the Defendants had communicated with Champlain and would continue to hold the shares in 'suspense,'" FAC ¶ 86, and implies that this would continue for an indefinite amount of time, leaving the share register in disarray. *See* FAC ¶ 76 ("Plaintiff was not given a time limit to register the [Subject Shares.]"). But this, too, is a red herring: even putting aside that Sturmanskie misrepresents what the letter actually says (*viz.*, that picturemaxx's counsel "*currently assumed*" that absent definitive guidance, none of the disputing parties could be "entered in the share register of" picturemaxx, *see* Ex. E (emphasis added)), the fact that Sturmanskie declined to pursue appropriate avenues to clear up its ownership dispute with Champlain is none of picturemaxx's doing. And none of this has any bearing on a securities fraud claim in any event, <u>because Sturmanskie had already entered into its contract with Supreme</u>, without any assurance from picturemaxx that the transfer would be considered valid or could be recorded in the share register.

complaint." *Id.* at 1296–97 (quoting 15 U.S.C. § 78u-4(b)(3)(A)).

The only allegations in the Complaint addressing scienter are generic and conclusory: that "[e]ach of the [Individual Defendants], acting both individually and as a group on their respective boards, in their positions as officers and directors of [picturemaxx]," either "intentionally caused", FAC ¶ 98(a), or "knowingly and recklessly caused", *id.* ¶ 98(b), picturemaxx to make the challenged statements and omissions.[13] Thus, the FAC fails to plead the required particularized facts establishing scienter as to any Individual Defendant, and therefore its conclusory allegations as to picturemaxx also do not suffice. "Corporations have no state of mind of their own; rather, the scienter of their agents must be imputed to them." *Thomson*, 610 F.3d at 635 (citing *Mizzaro*, 544 F.3d at 1254). Moreover, the grounds Sturmanskie presents to establish scienter, whether considered individually or collectively, are simply inadequate in any event.

First, Sturmanskie asserts that the Individual Defendants, on an undifferentiated group basis, "caused" picturemaxx to offer to register the Subject Shares in Sturmanskie's name only to avoid a threatened lawsuit. *See* FAC ¶¶ 68, 98(a). But Sturmanskie presents no particularized facts showing picturemaxx was <u>not</u> sincere in expressing such willingness in August 2020 (<u>after</u> the supposed lawsuit had been threatened), and the FAC itself admits that this effort failed anyway— because Sturmanskie could not open an appropriate account to hold the shares. *See id.* ¶ 78. Similarly, Sturmanskie asserts vaguely, again on a wholly undifferentiated group basis, that "Defendants preferred that Champlain would be the owner of the [Subject Shares]," or "had a plan to keep the [Subject Shares] in the name of Champlain." *Id.* ¶¶ 67, 98(a). But no particularized facts are pled to establish any such preference or plan, or even explain why picturemaxx or any of the Individual Defendants would care.

Second, Sturmanskie asserts that the Individual Defendants, again on an undifferentiated group basis, "caused" picturemaxx to state "to [Sturmanskie] that it would deposit the [Subject Shares] in the purchaser's account" if Sturmanskie sold them to a third party, when they "knew (or should have known)" that Sturmanskie would not be able to meet its obligations under the Supreme SPA. *See* FAC ¶¶ 96(c), 98(b); *supra* note 13. But this assertion fails because

---

[13] The reference in paragraph 98(b) to misstatements and omissions in "paragraph 89" appears to be a scrivener's error, as paragraph 89 lacks any such allegations. It appears Sturmanskie means to refer to paragraph 96(c), which follows the subparagraphs cited in the immediately preceding subsection (*i.e.*, 96(a) and (b)). Paragraph 96(c) alleges picturemaxx "[s]tated to [Sturmanskie] that it would deposit the [Subject Shares] in the purchaser's account" if Sturmanskie sold them to a third party. Defendants argue accordingly.

Sturmanskie has not adequately pled the predicate upon which it is based; namely, that picturemaxx ever made such a statement, either telephonically or via email. *See supra* Section II.A.2.b. The FAC is also devoid of any particularized allegations of fact that picturemaxx or any Individual Defendant had any motive to defraud Sturmanskie, or that picturemaxx stood to realize any benefit from doing so.

Thus, these putative grounds to establish scienter are not "cogent", nor are they "at least as compelling as any opposing inference one could draw from the facts alleged." *FindWhat*, 658 F.3d at 1300 (quoting *Tellabs*, 551 U.S. at 314). Here, it is far more compelling to infer that picturemaxx, through its outside counsel in Germany, was not seeking to defraud Sturmanskie (indeed, picturemaxx has gained nothing for its efforts but this lawsuit); but rather picturemaxx and its counsel were merely seeking to address a share ownership situation that was plainly complex, contested, and confused. Indeed, the situation devolved into a full-blown ownership dispute between Sturmanskie and Champlain—which they inexplicably declined to resolve between themselves.

Where a complaint "fails to sufficiently plead scienter as to any of the individuals who served as corporate directors or officers of [the defendant corporation], and there are no other allegations that give rise to an inference of scienter," the scienter allegations fail as a matter of law and the Section 10(b) claim must be dismissed. *See, e.g.*, *Thomson*, 610 F.3d at 635 (affirming dismissal of Section 10(b) and Rule 10b-5 claim for failure sufficiently to plead scienter).

For all of these reasons, Count I fails as a matter of law and must be dismissed.

B. *Counts II, III, and IV for Tortious Interference Fail to Adequately Plead the Elements Required to Maintain the Claims Under Fed. R. Civ. P. 12.*

Under Florida law, tortious interference requires: (1) the existence of a contract; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach. *See e.g.*, *Mattocks v. Black Entm't Television LLC*, 43 F. Supp. 3d 1311, 1318 (S.D. Fla. 2014); *Mariscotti v. Merco Grp. at Akoya, Inc.*, 917 So. 2d 890, 892 (Fla. 3d DCA 2005).[14] Each

---

[14] "Florida courts have determined tortious interference with a business relationship and tortious interference with a contract are nearly identical causes of action, with the 'only material difference' being 'in one there is a contract and in the other there is only a business relationship.'" *Landmark Bank, N.A. v. Cmty. Choice Fin., Inc.*, No. 17-60974, 2017 WL 4310754, at *20 (S.D. Fla. Sept. 28, 2017) (quoting *Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. 1st DCA 1976)).

of Sturmanskie's tortious interference claims fails to adequately plead one or more of these key elements and should be dismissed.

1. Counts II, III, and IV Fail to Allege Defendants Unjustifiably Interfered Because Defendants are a Necessary Party to Contracts and Business Relationships Involving Transfers of Its Shares.

Counts II, III, and IV allege Defendants interfered with Sturmanskie's contract rights or business relationships by either transferring the Subject Shares to Champlain or refusing to register the Subject Shares in a way required by the Supreme SPA. *See* FAC ¶¶ 107–10, 120–23, 133–36. However, Sturmanskie fails to plausibly plead that Defendants' actions constituted *unjustified* interference.

Unjustified interference requires "the interfering defendant be a third party, a stranger to the business relationship." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999). But a defendant is not a stranger if it has any "control over, that relationship," such as "when it has a supervisory interest in how the relationship is conducted[.]" *See Mattocks*, 43 F. Supp. 3d at 1319 (citations omitted). Moreover, the "tort of willful interference with a business relationship does not exist where the defendant was the source of the business opportunity allegedly interfered with." *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1345 (S.D. Fla. 1998) (citing *Genet Co. v. Annheuser–Busch, Inc.*, 498 So.2d 683, 684 (Fla. 3d DCA 1986)).

Sturmanskie attempts to skirt his pleading requirements by substituting bald legal conclusions for plausible factual allegations. Specifically, Sturmanskie alleges that none of the Defendants "had any beneficial or economic interest in, or control over, or potential financial interest" in the Champlain SPA, the business relationship with Champlain, or the Supreme SPA; nor did any of those arrangements "require[] the approval" of the Defendants. *See* FAC ¶¶ 111, 124, 137. These allegations are contradicted by Sturmanskie's own allegations, do not comport with German statute governing German corporate stock registration, and defy logic.

First, picturemaxx is plainly "the source" of the share certificates being transacted and "the business opportunity allegedly interfered with." A claim of tortious interference cannot be sustained against such a defendant. *See Burger King Corp. v. Berry*, No. 20-CV-21801, 2020 WL 10224201, at *12 (S.D. Fla. Sept. 4, 2020) (dismissing franchisee's tortious interference claim against a franchisor "since the franchisor is the source of the business opportunity" and "the

Franchise Agreement here expressly conditions the sale of Restaurants upon [franchisor's] prior written consent").

Additionally, the German Stock Corporation Act provides a corporation the legal right and obligation to preside over share registration decisions, and requires a corporation's involvement in registering shares that have been transferred between owners.[15] German corporations are not and cannot be strangers to contracts or business relationships involving the registration of their own shares. *See Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61019, 2018 WL 3730876, at *7 (S.D. Fla. July 5, 2018) (dismissing tortious interference claim because the defendants were not third parties to a business relationship which required the defendant's approval prior to the relationship's commencement); *Genet*, 498 So.2d at 684 ("Because plaintiffs' agreement with [the wholesaler] was specifically conditioned upon [defendant's] approval, as a matter of law, [defendant] cannot be liable for tortious interference with their agreement."). Even the FAC concedes, as it must, that Defendants had the power and duty to supervise share registration decisions, and describes Sturmanskie's dependency on Defendants in that regard. *See e.g.*, FAC ¶¶ 26-27, 29.

Given Defendants' inextricable involvement in the alleged contract or business relationships involving registration of picturemaxx shares, it is axiomatic they cannot be strangers to such a contract or business relationships. Sturmanskie's tortious interference claims must be dismissed with prejudice. *See, e.g.*, *Burger King*, 2020 WL 10224201, at *13 (dismissing tortious interference claim with prejudice because the defendant "itself is a necessary party to the business relationships allegedly interfered with and cannot be liable for tortious interference").

2.   Count III Also Fails to Plead Defendants Induced a Breach of the Champlain SPA.

Sturmanskie amended its claim that Defendants somehow interfered with the 2018 Champlain SPA—adding gratuitous color—yet it still fails to plead tortious interference. Sturmanskie now alleges picturemaxx transferred (and the Individual Defendants caused picturemaxx to transfer) all of the Subject Shares to Champlain, relieving Champlain from its

---

[15] Section 67 of the German Stock Corporation Act provides a corporation the legal right and obligation to preside over share registration decisions. *See* Aktiengesetz [AktG] [German Stock Corporation Act], as amended, § 67(3), (Ger.) (granting corporation the right to request and evaluate proof prior to registering a share that has been transferred to another person), http://www.gesetze-im-internet.de/englisch_aktg/englisch_aktg.html#p0318; *see also id.* § 67(5) (describing corporation's oversight and rights with respect to cancelling a share registration). Moreover, Florida follows the "internal affairs doctrine" and provides that matters involving the internal affairs of the corporation are governed by the law of the state of incorporation—here, Germany. *Carasquero v. Intrepid Glob. Imaging 3D, Inc.*, No. 08-CV-241, 2010 WL 11507435, at *10 n.27 (M.D. Fla. Sept. 29, 2010) (citing *Chatlos Found., Inc. v. D'Arata*, 882 So. 2d 1021, 1023 (Fla. 5th DCA 2004)).

obligation to pay Sturmanskie for the Subject Shares, rendering the Escrow Agreement meaningless, and "removing from Plaintiff its contractual right to receive ownership of the Subject Shares in lieu of payment under the Escrow Agreement." *See* FAC ¶¶ 121–22.

Fatal to Count III is Sturmanskie's continuing failure to allege an essential element of tortious interference – the "malicious interference by a third party . . . whereby one contracting party is induced to breach the contract to the injury of the other." *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397 (Fla. 1st DCA 1992) (citation omitted).

Sturmanskie's own allegations indicate Champlain breached and repudiated the SPA in 2018. *See* FAC ¶¶ 13–15. Indeed, Sturmanskie cannot argue Champlain did not already breach the SPA, as Sturmanskie's right to the Subject Shares is predicated upon Champlain's breach and alleged abandonment of title. *See id.* Thus, Defendants' subsequent actions in 2019 and later could not have induced a breach that already occurred without Defendants' involvement. *See* Restatement (Second) of Torts § 766 (1979) ("The particular agreement must be in force and effect at the time of the breach that the actor has caused"); *McKinney-Green*, 606 So. 2d at 398 (reversing denial of dismissal on similar grounds, as the complaint "did not specifically allege that [] the non-contracting party[] induced the other contracting party []to breach the agreement").

Sturmanskie's allegation that Defendants' post hoc conduct somehow induced Champlain's 2018 breach of contract is simply incomprehensible. No contract existed for picturemaxx to interfere with; Count III must be dismissed. *See, e.g.*, *Networkip LLC v. Spread Enters., Inc.*, 922 So. 2d 355, 358 (Fla. 3d DCA 2006) (finding that plaintiff could not establish tortious interference claim because it no longer had "an existing or prospective contractual right to the [terminated] business relationship" with defendant).

3. Count IV Also Fails to Plead that Sturmanskie and Champlain had an Ongoing Business Relationship with Which Defendants could Tortiously Interfere.

Count IV—where the FAC alleges that Sturmanskie somehow has an ongoing business relationship with Champlain—fares no better than Count III, whose underlying allegations are identical to those in Count III. *Compare* FAC ¶¶ 121–22, *with id.* ¶¶ 134–35. Count IV fails as does Count III: Sturmanskie fails to plead the existence of an ongoing business relationship with Champlain, or that Champlain would have performed pursuant to this relationship absent Defendants' interference.

"As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which

in all probability would have been completed if the defendant had not interfered." *TracFone Wireless, Inc. v. Narula*, No. 07-22202-CIV, 2008 WL 11407177, at \*9 (S.D. Fla. Jan. 10, 2008) (internal quotation marks omitted; quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994)). However, the FAC states Champlain breached the Champlain SPA and apparently terminated its relationship with Sturmanskie in September 2018. FAC ¶¶ 13–15. Champlain would later deny the transaction with Sturmanskie ever took place or that it had any legal effect. *Id.* ¶ 21. Sturmanskie cannot plausibly plead these actions constitute an ongoing business relationship "evidenced by an actual and identifiable understanding[.]" *See TracFone*, 2008 WL 11407177, at \*9. If anything, the present action itself is evidence of the <u>complete lack of understanding</u> between Sturmanskie and Champlain.

Sturmanskie also fails to allege how this actual and identifiable understanding or agreement, if it existed, would have "in all probability . . . been completed if the defendant had not interfered." *See id.* (dismissing tortious interference claim because "Plaintiff provides no basis for showing that there exists an understanding between it and any of its 'prospective customers' that would have been completed had the Defendants not interfered."). Champlain breached the Champlain SPA in September 2018 and apparently refused to engage with Sturmanskie long before Defendants were first informed of the situation in December 2019. FAC ¶¶ 13–15 ("Plaintiff . . . made repeated proposals to Champlain in an attempt to [get them] to pay the amount due . . . . However, the attempts were unsuccessful[.]").

The claim that Defendants somehow interfered with the already-deteriorated Sturmanskie-Champlain relationship is therefore simply implausible on its face. *See B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC,* No. 16-62364-CIV, 2017 WL 8751747, at \*5 (S.D. Fla. Nov. 14, 2017), *aff'd*, 758 F. App'x 785 (11th Cir. 2018) ("[Plaintiff's] Viva 5 relationship cannot form the basis of a tortious interference claim, since Viva 5 had terminated that relationship well before it began purchasing from [Defendant]. There was, therefore, no existing relationship with which Defendants could interfere."); *see also Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1288 (S.D. Fla. 2007) (dismissing tortious interference claim because the plaintiff failed to plead that it had existing business relationship with a third party, given that "the last contact between [the] plaintiffs and [third party] Home Depot . . . was plaintiffs' rejection of Home Depot's offer[.]").

Sturmanskie's sole conclusory allegation of an ongoing business relationship is that its "attempts to collect the purchase price of 2,358,250 euros, in lieu of ownership of the Subject Shares, constituted an ongoing business relationship regardless of Champlain's default of the SPA." FAC ¶ 132. However, Sturmanskie admits to ceasing its attempts to collect the purchase price in December 2019—when it began asserting its ownership of the Subject Shares. *See* FAC ¶¶ 15–16.

Thus, Sturmanskie fails to plead any "factual allegations tending to show that negotiations [or a relationship] would have continued and that [it] would have necessarily reached an agreement were it not for the alleged interference" of the Defendants. *Boldstar*, 517 F. Supp. 2d at 1288. Indeed, the impasse between Sturmanskie and Champlain regarding the Champlain SPA is what drove Sturmanskie to approach picturemaxx about share registration in the first place. *See* FAC ¶¶ 15–16. Count IV must be dismissed.

C.  *Sturmanskie Defeats Its Own Count V Conversion Claim by Admitting It Did Not and Could Not Possess the Subject Shares.*

"Under Florida law, a plaintiff in an action for conversion . . . must establish possession or an immediate right to possession of the converted property at the time of the conversion." *United States v. Bailey*, 419 F.3d 1208, 1212 (11th Cir. 2005). "[A]n owner who has neither possession nor the immediate right to it at the time of the conversion cannot maintain an action for [conversion]." *Bailey*, 419 F.3d at 1214 (cleaned up).

Plaintiff alleges it "had an immediate right to possession of the Subject Shares and this immediate right to possession was acknowledged by Defendant PMAG in the August 26th Email." FAC ¶ 142. However, Sturmanskie's claims are rendered implausible by the referenced email itself, which informs Sturmanskie that it must open a suitable bank account in order to "deliver the shares[.]" Ex. B at 2. The email is clear: no bank account, no share delivery—and no possession. "When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin*, 496 F.3d at 1205–06 (11th Cir. 2007) (cleaned up).

Sturmanskie confusingly pleads an alternative conversion claim—within Count V—stating it had an immediate right to possess the original 18,866 picturemaxx shares Sturmanskie sold to Champlain via the Champlain SPA. *See* FAC ¶ 143. Putting aside this clear deviation from Fed. R. Civ. P. 8 requiring that a "claim for relief must contain . . . a short and plain statement of the claim", *id.* at 8(a)(b), the allegation is internally—and patently—contradictory: Sturmanskie alleges both its sale of the 18,866 shares and an immediate right to possess what it already sold.

*Compare* FAC ¶ 143, *with id.* ¶¶ 4, 11 (alleging the sale of the 18,866 shares to Champlain). Such a legally defective claim must be dismissed. *See, e.g.*, *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, 479 F. Supp. 3d 1247, 1253 (N.D. Fla. 2020) (dismissing conversion claim where the plaintiff failed to plead a legal possessory right to the disputed property).

D.   *Sturmanskie Fails To Allege An Actionable Underlying Tort Or That The Individual Defendants Had A Personal Stake Apart From The Defendant Corporation So As To Sustain Count VI's Civil Conspiracy Claim.*

"The elements of civil conspiracy in Florida are: (1) an agreement between two or more parties[;] (2) to do an unlawful act; (3) doing an overt act to further the conspiracy; and (4) damage to the plaintiff as a result of the acts done under the conspiracy." *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1312 (S.D. Fla. 2017) (alteration added; citation omitted). Moreover, "the Eleventh Circuit requires a heightened pleading standard in conspiracy cases because a defendant must be informed of the nature of the conspiracy alleged." *Prestige Rests. & Ent., Inc. v. Bayside Seafood Rest., Inc.*, No. 09-23128-CIV, 2010 WL 680905, at *4 (S.D. Fla. Feb. 23, 2010), *aff'd sub nom., Prestige Rests. & Ent., Inc. v. Bayside Seafood Rest., Inc.*, 417 F. App'x 892 (11th Cir. 2011) (citation omitted). "[C]onclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint." *Id.* (citing *Kearson v. S. Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985)).

A cause of action for civil conspiracy requires the plaintiff plead an "actionable underlying tort or wrong." *Florida Fern Growers Ass'n v. Concerned Citizens of Putnam Cnty.*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993); *see also Estate of Scutieri v. Chambers*, 386 Fed. App'x 951, 954 (11th Cir. 2010). As an initial matter, Sturmanskie's civil conspiracy claim only "realleges and incorporates [] paragraphs 1 through 90 and 140 through 153 of this Complaint"—indicating the claim is only based on the underlying conversion claim. FAC ¶ 154; *see also* ¶¶ 140–53 (Count V, for conversion). Yet Sturmanskie confusingly alleges that all Defendants "acted in pursuance of the conspiracy . . . as more fully set forth in Count III (Tortious Interference with the SPA and Escrow Agreement), [and] Count IV (Tortious Interference with Plaintiff's Business Relations with Champlain)[.]" FAC ¶¶ 156-57.[16] To the extent Sturmanskie is pleading a conspiracy claim based on unincorporated tortious interference allegations, it should be dismissed. And

---

[16] Additionally, although Sturmanskie alleges that "[e]ach of Defendant PMAG, the Management Board Defendants and the Advisory Board Defendants individually conspired with Champlain," FAC ¶ 155, Sturmanskie has failed to join Champlain as a party in this litigation.

Sturmanskie's failure to adequately allege conversion in Count V is fatal to any conspiracy claim based on that tort. *See supra* Section II.C.

Alternatively, the intracorporate conspiracy doctrine bars Sturmanskie's conspiracy claim. The intracorporate conspiracy doctrine provides that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Rossi v. Darden*, No. 16-21199-CIV, 2016 WL 11501449, at *8 (S.D. Fla. July 19, 2016) (citing *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)). Because a corporation must act through its own directors, officers, or employees, *see Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So. 2d 252, 256 (Fla. 3d DCA 1993), it is "well settled that a corporation cannot conspire with those persons unless the individual has a personal stake in the activity apart from that of the corporation," *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1029 (Fla. 3d DCA 1981). Such a personal stake must be "separate and distinct from the corporation's interest," *Pinecrest Fine Art Co. v. David's Art, Inc.*, No. 05-20561-CIV, 2006 WL 8433265, at *7 (S.D. Fla. Feb. 2, 2006) (*citing Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So.2d 673, 676 (Fla. 1st DCA 1991), requiring "more than just personal animosity on the part of the agent" and a benefit that is "more than 'incidental' to the benefit to the principal." *Mancinelli v. Davis*, 217 So. 3d 1034, 1037 (Fla. 4th DCA 2017) (internal citations omitted).

Sturmanskie makes no allegation that the Individual Defendants harbored any particular animosity towards it, or that the Individual Defendants garnered any benefit so as to constitute a "personal stake separate and distinct" from the corporation. *See Pinecrest*, 2006 WL 8433265, at *7 (dismissing tortious interference conspiracy claim devoid of plausible allegations of the requisite personal stake separate from the corporation). Indeed, Sturmanskie alleges the opposite: that Defendants had no beneficial or financial interest in the transactions central to this action. FAC ¶ 111 ("Neither Defendant [picturemaxx] nor any of the [Individual Defendants] had any beneficial or economic interest in . . . or potential financial interest [in] the [Escrow Agreement].") ; *id.* ¶ 124 (same, regarding both the Supreme SPA and Escrow Agreement); *id.* ¶ 137 (same, regarding the relationship with Champlain).

To the extent that Sturmanksie argues that the Individual Defendants conspired with each other (leaving out picturemaxx), the intra-corporate conspiracy also "precludes the claim of conspiracy against individuals and their corporation for wholly internal agreements[.]" *Mancinelli*,

217 So. 3d at 1037; *see also Pro. LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1372 (S.D. Fla. 2015) (dismissing civil conspiracy claim because there were no allegations the individual defendants acted for their own gain separate from the corporation's interests). Count VI must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants ask the Court to enter an Order dismissing the entire Complaint with prejudice.

Dated: September 29, 2021.                              Respectfully submitted,


                                        /s/ Matthew D. Grosack
                                        HOLLAND & KNIGHT LLP
                                        701 Brickell Avenue, Suite 3300
                                        Miami, Florida 33131
                                        Telephone: 305-374-8500

                                        Matthew D. Grosack
                                        Florida Bar No. 73811
                                        matthew.grosack@hklaw.com

                                        Andrew W. Balthazor
                                        Florida Bar No. 1019544
                                        andrew.balthazor@hklaw.com

                                        HOLLAND & KNIGHT LLP
                                        10 St. James Avenue, 11th Floor
                                        Boston, Massachusetts 02116
                                        Telephone: 617-305-2015

                                        Roger A. Lane
                                        roger.lane@hklaw.com
                                        admitted *pro hac vice*

                                        *Attorneys for Defendants*